1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   ANTONETT TORRES,                     No.  2:15-cv-00198-TLN-CKD

12              Plaintiff,

13        v.                              **ORDER GRANTING IN PART AND
                                          DENYING IN PART DEFENDANTS'
14   CARESCOPE, LLC and FRANK SIM, an     MOTION FOR PARTIAL JUDGMENT ON
     individual,                          THE PLEADINGS AND GRANTING IN
15                                        PART AND DENYING IN PART
                                          PLAINTIFF'S MOTION FOR PARTIAL
16              Defendants.               SUMMARY JUDGMENT**

17

18        This matter is before the Court pursuant to Defendants Carescope, LLC and Frank Sim's

19   (collectively, "Defendants") Motion for Partial Judgment on the Pleadings (ECF No. 38) and

20   Plaintiff Antonett Torres's ("Plaintiff") Motion for Partial Summary Judgment (ECF No. 43).

21   The parties both oppose each other's motions (ECF Nos. 45, 47) and both filed replies (ECF Nos.

22   50, 51).  For the reasons set forth below, Defendants' Motion for Partial Judgment on the

23   Pleadings is GRANTED in part and DENIED in part and Plaintiff's Motion for Partial Summary

24   Judgment is GRANTED in part and DENIED in part.

25   / / /

26   / / /

27   / / /

28   / / /

                                             1

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

2        Plaintiff was employed by Defendants as a caregiver for residential care facilities in and

3    around Sacramento.  (ECF No. 4 at ¶ 10.)  Plaintiff alleges Defendants systematically failed to

4    pay her and similarly situated individuals in conformance with federal and state law.  (ECF No. 4

5    at ¶ 5.)  Plaintiff filed the instant action against Defendants on January 26, 2015 (ECF No. 1) and

6    filed a First Amended Complaint on May 8, 2015 ("FAC") (ECF No. 4.).  Plaintiff alleges the

7    following eight claims: (1) failure to pay overtime wages in violation of the Fair Labor Standards

8    Act ("FLSA") (29 U.S.C. § 207(a)); (2) failure to pay state minimum wages in violation of

9    California Labor Code §§ 1194, 1194.2, 1197(a), and Wage Orders; (3) failure to pay state

10   overtime and double time wages in violation of California Labor Code §§ 510, 1194, and Wage

11   Orders; (4) failure to provide accurate itemized wage statements in violation of California Labor

12   Code §§ 226, 226.6, and Wage Orders; (5) failure to pay all wages owed upon discharge in

13   violation of California Labor Code §§ 201, 202, and 203; (6) failure to allow inspection or

14   copying of employee records in violation of California Labor Code §§ 226(b), 1174, and 1175;

15   (7) unfair competition in violation of the California Unfair Competition Law ("UCL") (California

16   Business & Professions Code §§ 17200–17210); and (8) penalties pursuant to the Private

17   Attorneys General Act ("PAGA") (California Labor Code §§ 2698–2699.6).  (*See* ECF No. 4.)

18       The Court issued a Minute Order on July 17, 2017, noting that Plaintiff is to proceed on

19   her claims individually and not as a representative of a class.  (ECF No. 36.)  Defendants

20   subsequently filed their Motion for Partial Judgment on the Pleadings (ECF No. 38) on July 18,

21   2018, and Plaintiff filed her Motion for Partial Summary Judgment (ECF No. 43) on July 27,

22   2018.

23   **II.    STANDARD OF LAW**

24       A.  Motion for Judgment on the Pleadings

25       Federal Rule of Civil Procedure ("Rule") 12(c) provides "[a]fter the pleadings are closed

26   — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed.

27   R. Civ. P. 12(c).  The issue presented by a Rule 12(c) motion is substantially the same as that

28   posed in a 12(b) motion — whether the factual allegations of the complaint, together with all

2

1    reasonable inferences, state a plausible claim for relief.  *See Cafasso v. Gen. Dynamics C4 Sys.*,

2    637 F.3d 1047, 1054–1055 (9th Cir. 2011).  "A claim has facial plausibility when the plaintiff

3    pleads factual content that allows the court to draw the reasonable inference that the defendant is

4    liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.*

5    *Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

6         In analyzing a 12(c) motion, the district court "must accept all factual allegations in the

7    complaint as true and construe them in the light most favorable to the non-moving

8    party."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  Nevertheless, a court "need not

9    assume the truth of legal conclusions cast in the form of factual allegations."  *United States ex rel.*

10   *Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  "A judgment on the pleadings is

11   properly granted when, taking all the allegations in the non-moving party's pleadings as true, the

12   moving party is entitled to judgment as a matter of law."  *Ventress v. Japan Airlines*, 603 F.3d

13   676, 681 (9th Cir. 2010).  Courts have the discretion to grant a Rule 12(c) motion with leave to

14   amend, and to simply grant dismissal of the action instead of entry of judgment.  *See Lonberg v.*

15   *City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004); *Carmen v. S.F. Unified Sch.*

16   *Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997).

17        Even though Rule 12(c) does not expressly authorize "partial judgments," courts within

18   the Ninth Circuit have recognized application of Rule 12(c) to individual causes of action.

19   *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997), *aff'd*,

20   237 F.3d 1026 (9th Cir. 2001).  Thus, "[c]ourts have discretion to grant leave to amend in

21   conjunction with 12(c) motions, and may dismiss causes of action rather than grant judgment."

22   *Id.*  However, courts have not entertained motions for partial judgment on the pleadings for only

23   part of an individual claim or defense or "with respect to less than a full cause of action."  *Erhart*

24   *v. Bofl Holding, Inc.*, 387 F. Supp. 3d 1046, 1062–63 (S.D. Cal. 2019) (quoting Wright & Miller);

25   *U.S. v. Real Property and Improvements Located at 2366 San Pablo Ave., Berkeley, CA*, 2013

26   WL 6774082, at *1 (N.D. Cal. 2013).

27   / / /

28   / / /

1          B.  Motion for Summary Judgment

2          Summary judgment is appropriate when the moving party demonstrates no genuine issue

3   of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

4   R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

5   judgment practice, the moving party always bears the initial responsibility of informing the

6   district court of the basis of its motion, and identifying those portions of "the pleadings,

7   depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

8   which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

9   *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

10  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

11  solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

12  324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a

13  party who does not make a showing sufficient to establish the existence of an element essential to

14  that party's case, and on which that party will bear the burden of proof at trial.

15         If the moving party meets its initial responsibility, the burden then shifts to the opposing

16  party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus.*

17  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*

18  *Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute,

19  the opposing party may not rely upon the denials of its pleadings, but is required to tender

20  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

21  support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

22  demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

23  suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

24  the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for

25  the nonmoving party.  *Id.* at 251–52.

26         In the endeavor to establish the existence of a factual dispute, the opposing party need not

27  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

28  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

4

trial." *First Nat'l Bank*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

**III.   ANALYSIS**

A.  Defendants' Motion for Partial Judgment on the Pleadings

Defendants move for partial judgment on the pleadings on Plaintiff's sixth, seventh, and eighth claims.  (*See* ECF No. 38-1.)  In conjunction with their motion, Defendants also submit requests for judicial notice.  (*See* ECF Nos. 38-2, 50-1.)  The Court will first evaluate the requests for judicial notice, then address the sixth and seventh claims together (as Defendants make overlapping arguments as to these claims), and finally address the eighth claim.

*i.     Defendants' Request for Judicial Notice*

Defendants request the Court take judicial notice of Exhibits A through D.  (*See id.*) Plaintiff does not oppose Defendants' request.  (*See* ECF No. 47.)

"Generally, a district court may not consider any material beyond the pleadings in a ruling on a 12(c) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19

1   (9th Cir. 1990).  However, a court may take judicial notice of facts that can be "accurately and

2   readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.

3   Evid. 201(b)(2).  The Ninth Circuit has held that proceedings and determinations of the courts are

4   a matter of public record suitable for judicial notice.  *Emrich v. Touche Ross & Co.*, 846 F.2d

5   1190, 1198 (9th Cir. 1988).

6       Exhibit A is a class action settlement agreement in *Hayward v. Carescope, LLC dba A*

7   *Voice for Seniors*, Case No. 34-2014-001168100, which was filed in Sacramento County Superior

8   Court on January 24, 2017.  (ECF No. 38-2 at 3–14.)  Exhibit C is a copy of Plaintiff's FAC filed

9   with this Court.  (ECF No. 38-2 at 22–49.)  Exhibit D is an endorsed dismissal with prejudice of

10  Defendant Sim in the Hayward Action, dated March 30, 2016.  (ECF No. 50-1 at 4–7.)  As these

11  are all "matters of public record" or "proceedings and determinations of the courts," Defendants'

12  request for judicial notice of Exhibits A, C, and D is GRANTED.

13      Exhibit B is a letter dated November 26, 2014 to the PAGA Administrator from Plaintiff's

14  counsel with an attached notice that the letter was returned to sender.  (ECF No. 38-2 at 15–21.)

15  As Defendants have not pointed to any judicially noticeable facts in this letter, Defendants'

16  request for judicial notice of Exhibit B is DENIED.

17                  *ii.       Claims Six and Seven*

18      Plaintiff's sixth claim against Defendant Carescope, LLC alleges Defendants failed to

19  allow inspection or copying of employee records in violation of Cal. Lab. Code §§ 226(b), 1174,

20  and 1175.  (ECF No. 4 at 19–20.)  Plaintiff's seventh claim against Defendant Carescope, LLC

21  alleges a UCL claim predicated on violations of specific Labor Code sections alleged in her FAC.

22  (*Id.* at 20–22.)  Plaintiff seeks an injunction in both claims to ensure compliance with §§ 226(b)–

23  (c) and "to prevent future damage" from Defendants' violation of the UCL.  (*Id.*)  Plaintiff also

24  seeks penalties in claim six and restitution in claim seven.  (*Id.* at 20–21.)

25      Defendants argue Plaintiff lacks standing to seek prospective relief in the form of an

26  injunction because Plaintiff is no longer Defendants' employee.  (ECF No. 38-1 at 3–5.)  Plaintiff

27  does not address this argument in her opposition.  (*See* ECF No. 47.)  Plaintiff argues instead

28  "Rule 12(c) does not specifically authorize a motion for judgment on the pleadings directed to

1    less than the entire complaint or answer," and thus Defendants' entire motion for judgment on the

2    pleadings should be denied.  (ECF No. 47 at 3.)

3           Courts within the Ninth Circuit have recognized application of Rule 12(c) to individual

4    causes of action.  *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D.

5    Cal. 1997), *aff'd*, 237 F.3d 1026 (9th Cir. 2001).  Courts have not entertained motions for partial

6    judgment on the pleadings for only part of an individual claim or defense or "with respect to less

7    than a full cause of action."  *Erhart*, 387 F. Supp. 3d at 1062–63; *U.S. v. Real Property and*

8    *Improvements Located at 2366 San Pablo Ave., Berkeley, CA*, 2013 WL 6774082, at *1.

9           Here, Defendants do not challenge the merits of the claims as a whole.  Rather,

10   Defendants seek adjudication as to only one aspect of Plaintiff's sixth and seventh claims:

11   injunctive relief.  Yet injunctive relief is one of several remedies Plaintiff seeks, along with

12   penalties and restitution.  (*See* ECF No. 4.)  Because Defendants motion as to Claims Six and

13   Seven is "with respect to less than [the] full cause[s] of action," the Court declines to entertain

14   Defendants' motion as to these claims.

15          Accordingly, Defendants' motion for judgment on the pleadings as to Plaintiff's sixth and

16   seventh claims is DENIED.

17                              *iii.*      *Claim Eight*

18          In her eighth claim against all Defendants, Plaintiff seeks to recover penalties under

19   PAGA for violations of the California Labor Code.  (ECF No. 4 at 22–23.)  Defendants argue

20   Plaintiff is barred from bringing her PAGA claim due to: (1) failure to comply with

21   administrative exhaustion requirements; (2) claim preclusion; and (3) issue preclusion. (*See* ECF

22   No. 38-1.)  The Court will address Defendants' arguments in turn.

23                           *a)  Administrative Exhaustion*

24          The PAGA allows for an "aggrieved employee" to "bring a civil action against an

25   employer 'on behalf of himself or herself and other current or former employees' when an

26   employer has violated the California Labor Code."  *Varsam v. Laboratory Corp. of America*, 120

27   F. Supp. 3d 1173, 1180 (S.D. Cal. 2015) (citing Cal. Lab. Code § 2699(a)).  An aggrieved

28   employee must first exhaust administrative requirements prior to filing a PAGA claim.  *Chang v.*

7

1     *Biosuccess Biotech Co., Ltd.*, 76 F. Supp. 3d 1022, 1049 (C.D. Cal. 2014).  Cal. Lab. Code §

2     2699.3 requires an aggrieved employee to first "give written notice by online filing with the

3     Labor and Workforce Development Agency [LWDA] and by certified mail to the employer of the

4     specific provisions of this code alleged to have been violated, including the facts and theories to

5     support the alleged violation."  Cal. Lab. Code § 2699.3.  Prior to filing a suit in court, the

6     aggrieved employee "must then wait until the earlier of notice from the LWDA that it will not

7     investigate the grievance, or 33 calendar days."  *Chang*, 76 F. Supp. 3d at 1050.

8         A plaintiff pleads compliance with the exhaustion requirements by listing "(1) when

9     [plaintiff] notified the LWDA about the violations, (2) what, if any, responses, she received from

10    the LWDA, or (3) how long she waited before commencing this action."  *Varsam*, 120 F. Supp.

11    3d at 1182–83 (internal citations and quotations omitted).  A plaintiff should also plead the "facts

12    and theories" that were provided to the LWDA to qualify as sufficient notice.  *Id.* at 1183.

13    Without these "facts and theories," a plaintiff only states legal conclusions that are insufficient to

14    support a claim.  *Id.*

15         Here, Plaintiff fails to explicitly plead when she notified LWDA about the violations,

16    what, if any, responses Plaintiff received from the LWDA, or how long Plaintiff waited from the

17    time she notified the LWDA before she commenced the instant suit.  (*See* ECF No. 4.)  Plaintiff

18    does not state the "facts and theories" she provided to the LWDA — she pleads only that she

19    "seeks civil penalties" for the "violations of the Labor Code alleged" in her FAC.  (*Id.*)  Thus,

20    Plaintiff fails to state a plausible claim for relief.  *See Cafasso*, 637 F.3d at 1054–1055.  Despite

21    this, the Court turns to an analysis of claim and issue preclusion to determine whether to grant

22    leave to amend.

23                *b)  Claim Preclusion*

24         On August 22, 2014, Tamara Hayward ("State Plaintiff") filed a lawsuit in Sacramento

25    County Superior Court ("Hayward Action") against Defendants on behalf of herself and her

26    PAGA class — "all of [Carescope LLC's] employees who worked as caregivers and/or who

27    worked live-in shifts as caregivers from July 14, 2013 to December 31, 2014, which is

28    approximately 169 individuals."  (*See* ECF No. 7-6 at 4–20; ECF No. 38-2 at 9.)  The Hayward

1   Action consisted of wage and hour claims that alleged violations of substantially similar

2   provisions of the Labor Code as Plaintiff's instant FAC.  (*See* ECF No. 7-6 at 4–20.)  The parties

3   in the Hayward Action reached a settlement agreement with respect to State Plaintiff's PAGA

4   claim that was approved by the Sacramento County Superior Court on January 24, 2017.  (*See*

5   ECF No. 38-2 at 3–14.)

6          Defendants contend State Plaintiff's settlement agreement should have preclusive effect in

7   the instant case.  (ECF No. 38-1 at 7.)  Defendants posit "res judicata" bars "a subsequent action

8   by the parties or their privies on the same cause of action," and "the doctrine of collateral estoppel

9   precludes litigants from re-litigating claims related to the subject matter of a previous action

10  which could have been litigated in that action."  (*Id.* at 8.)  Defendants do not explicitly state

11  Plaintiff is a member of the settlement class in the Hayward Action and is thus precluded from

12  bringing this claim, but strongly suggest this.  Defendants state "the PAGA settlement" in the

13  Hayward Action applies to "all of [Defendants'] employees who work as caregivers and/or who

14  worked live-in shifts as caregivers from July 14, 2013 to December 31, 2014."  (*Id.*)  It is

15  undisputed by all parties that this settlement class definition includes Plaintiff.  (ECF No. 38-1 at

16  1; ECF No. 47 at 2.)

17         Claim preclusion "prevents relitigation of the same cause of action in a second suit

18  between the same parties or parties in privity with them."  *Mycogen Corp. v. Monsanto*, 28 Cal.

19  4th 888, 896 (2002).  "The preclusive effect accorded a state court judgment in a subsequent

20  federal court proceeding is determined by reference to the laws of the rendering state."  *U.S. ex*

21  *rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 250 (9th Cir. 1992)

22  (citing 28 U.S.C. § 1738; *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373,

23  380 (1985)).  The Court therefore looks to the claim preclusion rules of California.  Under

24  California law, claim preclusion "arises if a second suit involves (1) the same cause of action (2)

25  between the same parties (3) after a final judgment on the merits in the first suit."  *DKN Holdings*

26  *LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015).  The Court will evaluate the third element first.

27  Because it is not met, the Court declines to evaluate the remaining elements.

28  / / /

9

California case law provides that a final judgment on the merits includes a court-approved settlement. *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 694 (2008).  California case law requires that class action settlement agreements be approved by a court.  *See In re Microsoft I–V Cases*, 135 Cal. App. 4th 706, 723 (2006); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1800–01 (1996).  "A dismissal with prejudice following a settlement" is a final judgment on the merits, as "[d]ismissal with prejudice is determinative of the issues in the action and precludes the dismissing party from litigating those issues again." *Estate of Redfield*, 193 Cal. App. 4th 1526, 1533 (2011) (citing *Torrey Pines Bank v. Superior Court*, 216 Cal. App. 3d 813, 820 (1989); *Estate of Cook*, 205 Cal. 581, 589 (1928); *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America*, 133 Cal. App. 4th 1319, 1330 (2005)).  The term "with prejudice clearly means the plaintiff's right of action is terminated and *may not be revived*." *Id.* (internal quotations omitted).  A dismissal without prejudice does not have the same preclusive effect.  *See Torrey Pines Bank*, 216 Cal. App. 3d at 825; *Alpha Mechanical, Heating & Air Conditioning, Inc.* 133 Cal. App. 4th at 1335.

Here, Defendants' Exhibit A is a class action settlement agreement, the title of which reflects an approval of the "Private Attorneys General Act Settlement and Dismissing Private Attorney[s] General Act Claims with Prejudice."  (ECF No. 38-2 at 3–14.)  Upon closer inspection, the agreement provides that "the claims of any putative class member, class claims, and/or class allegations shall be dismissed *without prejudice*," while the "[State Plaintiff's] PAGA claims shall be dismissed *with prejudic*e in their entirety."  (*Id.* at 7) (emphasis added).  It is undisputed Plaintiff was one of Defendants' employees "who worked as [a] caregiver[] and/or who worked live-in shifts as [a] caregiver[] from July 14, 2013 to December 31, 2014" (ECF No. 38-1 at 2; ECF No. 47 at 2), which is how the settlement agreement defines the settlement class (ECF No. 38-2 at 9).

The settlement agreement does not detail any opt-in or opt-out procedures for class members (ECF No. 38-2 at 8–11).  Defendants contend "Plaintiff acknowledges, through her attorney's declaration, that the PAGA settlement achieved in the [Hayward Action] was accepted by [Plaintiff]."  (ECF No. 50 at 1.)  Plaintiff's counsel did file a declaration in support of

10

1   Plaintiff's opposition attaching "a true and correct copy of the PAGA Settlement in the [Hayward
2   Action]," but said nothing more.  (ECF No. 47-1 at 2; *see* ECF No. 47-6.)  However, whether
3   Plaintiff is a putative class member or not ultimately does not matter.  If Plaintiff *is* a putative
4   class member, the claims of putative class members have been dismissed without prejudice.
5   (ECF No. 38-2 at 3–14.)  This allows putative class members to litigate those issues again.  As
6   there has been no "dismissal with prejudice following a settlement," there is no final judgment on
7   the merits with respect to any claims putative class members may bring in the future.  If Plaintiff
8   *is not* a putative class member, then there is still no bar to her bringing a PAGA claim.  As such,
9   the third element is not met and Plaintiff is not claim-barred from bringing her eighth PAGA
10  claim.

11                            *c)  Issue Preclusion*

12          Collateral estoppel, or issue preclusion, provides that a party cannot relitigate an issue the
13  party fully and fairly litigated on a previous occasion.  *In re Marriage of Boblitt*, 223 Cal. App.
14  4th 1004, 1028 (2014).  While claim preclusion prevents parties from relitigating a specific cause
15  of action, issue preclusion is broader in the sense that "the doctrine may also preclude a party to
16  prior litigation from redisputing issues therein decided against him, even when those issues bear
17  on different claims raised in a later case."  *Smith v. ExxonMobil Oil Corp.*, 153 Cal. App. 4th
18  1407, 1414 (2007).  Issue preclusion applies "(1) after final adjudication (2) of an identical issue
19  (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was
20  a party in the first suit or one in privity with that party."  *DKN Holdings LLC*, 61 Cal. 4th at 825.

21          As established above, there has been no "final adjudication" or no "final judgment on the
22  merits in the first suit" with respect to Plaintiff's claims.  Thus, Plaintiff may bring future claims
23  against Defendants and the first element of issue preclusion is not met.  As such, the Court
24  declines to evaluate the remaining elements.  Accordingly, Plaintiff is not issue-barred from
25  bringing her eighth claim under PAGA.

26          Plaintiff's eighth claim fails to sufficiently allege compliance with administrative
27  exhaustion requirements.  However, because it does not appear to the Court that this claim will be
28  claim-barred or issue-barred, Defendants' motion for judgment on the pleadings as to Plaintiff's

1   eighth claim is GRANTED with leave to amend.

2   B.   Plaintiff's Motion for Partial Summary Judgment

3   Plaintiff moves for summary judgment as to Plaintiff's second, third, fourth, fifth, and

4   eighth claims and requests attorneys' fees and costs.[1]   Given that Defendants' motion for

5   judgment on the pleadings is granted as to Plaintiff's eighth claim, the Court will consider only

6   claims two through five.   The Court will evaluate each claim in turn.

7   i.      Claim Two

8   Plaintiff moves for summary judgment on the failure to pay state minimum wage against

9   Defendant Carescope, LLC, arguing Plaintiff's wage statements and time keeping records "reveal

10  that she was not paid for work performed on September 15, 2012."   (ECF No. 43-1 at 12.)

11  Plaintiff specifies the time keeping records show Plaintiff "worked five overnight shifts for which

12  she was paid $144 for each overnight shift and one twelve[-]hour shift on September 15, 2012,"

13  but the wage statement does not show Plaintiff was paid for the shift on September 15.   (ECF No.

14  43-1 at 12.)   In opposition, Defendants assert Plaintiff "routinely failed to submit her time sheets

15  to management in a timely manner, failed to submit legible time sheets, and often failed to use the

16  required telephony system to report her hours."   (ECF No. 45 at 9.)   Defendants note that they

17  have paid any amount Plaintiff claimed was outstanding when she complained about paycheck

18  errors in the past and that Plaintiff should not be given an opportunity to recover "the purported

19  deficiency years after the fact."   (Id.)   Defendants do not cite any supporting law for these

20  assertions.   (Id.)   The Court will first address the timeliness issue and then address the underlying

21  claim.

22  a)   Statute of Limitations

23  The statute of limitations is three years for wage liabilities created by statute, such as the

24  unpaid minimum wage liability that Plaintiff asserts in the instant case.   Cal. Civ. Proc. Code §

25  338; see also Cuadra v. Millan, 17 Cal. 4th 855, 859 (1998), rev'd on other grounds, Samuels v.

---

26  [1]      Plaintiff also moves for summary judgment as to "Plaintiff's Labor Code § 210 Claim for
27  Failure to Pay Periodic Wages Due" (ECF No. 43-1 at 21), but Plaintiff did not state a claim
    under Labor Code § 210 in her FAC.   (See ECF No. 4.)   Thus, the Court disregards Plaintiff's
28  motion as to this specific claim.

*Mix*, 22 Cal. 4th 1 (1999). Plaintiff filed her first Complaint on January 26, 2015, which is within three years of Plaintiff's unpaid wage claim for September 15, 2012. Therefore, Plaintiff is not time-barred from recovering unpaid wages on that date.

*b) Minimum Wage Claim*

California Labor Code § 1194 provides employees with a cause of action for unpaid minimum wages. *Martinez v. Combs*, 49 Cal. 4th 35, 49 (2010). Section 1194 states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

*Id.* Determination of the "minimum wage or overtime compensation" to which Plaintiff is entitled requires an evaluation of applicable regulations. The Industrial Welfare Commission ("IWC") is the state agency empowered to formulate regulations (known as wage orders) governing employment in California. *Peabody v. Time Warner Cable, Inc.*, 59 Cal. 4th 662, 667 n.3 (2014); *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 795 (1999). Although the IWC was defunded in 2004, its wage orders remain in effect. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1102 n.4 (2007). The IWC has issued wage orders covering sixteen specific industries and occupations. *See* CAL. CODE REGS. tit. 8, §§ 11010–11160; *see also Martinez*, 49 Cal. 4th at 57.

Wage Order 5–2001 is relevant here. Wage Order 5–2001 regulates wages, hours, and working conditions in the public housekeeping industry — a category that includes care homes like those operated by Defendants. CAL. CODE REGS. tit. 8, § 11050(1); *id.* at § 11050(2)(P)(4). Section 4(B) of Wage Order 5–2001 states: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." CAL. CODE REGS. tit. 8, § 11050(4)(B). Wage Order 5–2001 provides that employees are to be paid one and one-half times the employee's regular rate of pay for all hours worked in excess of eight hours, up to and including 12 hours in any workday, and

13

1  double the employee's regular rate of pay for all hours worked in excess of 12 hours in any

2  workday.  *Id.* at § 11050(3)(A)(1)(a)–(b).

3       Here, Plaintiff's earnings statement that covered the pay period from September 6, 2012

4  through September 19, 2012 reflects a rate of "144.00" at 5 hours worked, for a total of "720.00"

5  for the entire period.  (ECF No. 43-5.)  Plaintiff's notations on the accompanying "Weekly Time

6  Sheet & Service Log" are difficult for the Court to ascertain.  (*See* ECF No. 43-6.)  Plaintiff

7  alleges she worked five 24-hour overnight shifts in the time period.  (ECF No. 43-1 at 12.)

8  Despite Plaintiff's inconsistent notations, the Court can ascertain that Plaintiff allegedly worked

9  three 24-hour overnight shifts in the time period (from September 8 to 9, 11 to 12, and 12 to 13 in

10  2012); one day at 17 hours and 30 minutes to finish a 24-hour overnight shift (on September 6,

11  2012); and one day at 12 hours (September 15, 2012).  (*See* ECF No. 43-6.)  Plaintiff's earnings

12  statement should reflect those hours.

13       Plaintiff's "Wage Claim & Penalty Calculation Summary" states in the pay period from

14  September 6, 2012 through September 19, 2012, Plaintiff worked eight regular hours and four

15  overtime hours for which she was not paid (presumably on September 15 as she alleges, but it is

16  not noted in the document).  (ECF No. 43-42 at 1.)  The summary also states that this amounts to

17  $126.00 in unpaid wages (or $199.74 in unpaid wages plus interest).  (*Id.*)

18       However, the following problems remain.  First, as will be established later in this Order,

19  the wage statements are inaccurate — the Court cannot rely on them.  Second, it would appear as

20  though September 5 to 6 is an overnight shift.  Defendant Carescope LLC's person most

21  knowledgeable ("PMK") noted that employees had 16 hours of paid working time and 8 hours of

22  unpaid down time in each 24-hour overnight shift.  (ECF No. 43-4 at 12–13.)  The Court cannot

23  determine how many paid working hours and how many unpaid down time hours Plaintiff had on

24  September 6 because the specific hours are not noted on her time sheet.  (*See* ECF No. 43-6.)

25  This means the Court cannot calculate how much Plaintiff should have been paid for all of her

26  hours during the pay period of September 6 to 19 to see if she was not paid for her

27  hours on September 15, 2012.  Third, there is a possibility that Plaintiff may have been paid for

28  the September 6 hours in the previous earnings statement because Defendants seem to pay

1   $144.00 for each 24-hour overnight shift, but the earnings statement and time sheet for that pay

2   period are not included in the record.

3         The Court is therefore unable to conclude as a matter of law that Defendants failed to pay

4   Plaintiff the minimum wage.  To the extent that the missing information needed to calculate

5   wages owed to Plaintiff is not provided to the Court, it is the moving party's obligation to provide

6   it.  *See* Fed. R. Civ. P. 56(c)(3).  Based on the foregoing, Plaintiff's motion for summary

7   judgment as to the minimum wage claim is DENIED.

8                     *ii.*      *Claim Three*

9         Plaintiff moves for summary judgment on the failure to pay state overtime and double

10  time wages claim against Defendant Carescope, LLC, arguing Defendants "suffer[ed] and

11  permit[ed] Plaintiff to work in excess of 8 hours and 12 hours a day during her overnight shifts

12  and fail[ed] to pay her at her appropriate [overtime] rates."  (ECF No. 43-1 at 9.)  In opposition,

13  Defendants assert Plaintiff is trying to recover for time "she spent sleeping while staying

14  overnight at a client's home."  (ECF No. 45 at 6.)  Plaintiff clarifies in her reply that she is not

15  seeking overtime compensation for sleep time, but for the 16 hours worked on overnight shifts.

16  (ECF No. 51 at 4.)

17        As noted previously, Wage Order 5–2001 provides that employees are to be paid one and

18  one-half times the employee's regular rate of pay for all hours worked in excess of eight hours, up

19  to and including 12 hours in any workday, and double the employee's regular rate of pay for all

20  hours worked in excess of 12 hours in any workday.  CAL. CODE REGS. tit. 8, § 1050(3)(A)(1)(a)–

21  (b).

22        Here, Plaintiff argues that Defendants' failure to pay Plaintiff her overtime wages can be

23  divided into two time periods.  (ECF No. 43-1 at 9.)  The first is from September 6, 2012 to

24  February 3, 2013, when Defendants paid Plaintiff $144 in total for her 16-hour overnight shifts,

25  thereby failing to pay her the overtime and double time wages she was due.  (*Id.* at 9–10.)  The

26  second is from January 6, 2014 to May 25, 2014, when Defendants adjusted her rate of pay

27  downward to $8.00 per hour and failed to pay her the double time wages she was due.  (*Id.* at 10.)

28  Defendant Carescope LLC's PMK testified the live-in, 24-hour shift employees were paid at the

1   "regular rate of pay" for the entire 16 hours, but that "changed at some point in time" because

2   Defendants began paying overtime.  (ECF No. 43-4 at 13–14.)  The exact "point in time" was not

3   identified in the pages of the PMK deposition Plaintiff provided to the Court.  (*See id.*)

4         Three problems remain with the instant claim.  First, this claim includes the pay period of

5   September 6, 2012 to September 19, 2012.  As noted previously, the Court cannot determine how

6   many working hours or unpaid down time hours Plaintiff had on September 6 because the specific

7   hours are not noted on her time sheet.  The Court cannot determine whether Plaintiff was

8   adequately compensated for her hours worked.  Second, Plaintiff claims in her statement of

9   undisputed facts that one of the pay periods at issue is the period from April 14, 2014 to April 27,

10   2014.  (ECF No. 43-2 at ¶ 23.)  However, she only provided the time sheet for this period and not

11   the earnings statement.  (*See* ECF No. 43-33.)  The Court cannot determine whether she was

12   adequately compensated for this period.  Third, descriptions of the type of wages Plaintiff earned

13   on the earnings statements from January 6, 2014 to May 25, 2014 are cut off.  (*See* ECF Nos. 43-

14   19, 43-21, 43-23, 43-25, 43-27, 43-29, 43-31, 43-34, 43-36, 43-38.)  The Court cannot ascertain

15   the type of hours Plaintiff worked and whether she was adequately compensated.

16         The Court, however, does note the following.  Pursuant to Wage Order 5–2001, Plaintiff's

17   16-hour overnight shifts when she was paid $9.00 per hour should be calculated as follows:

18   ($9.00 per hour x first 8 hours x 1) + ($9.00 per hour x second 4 hours x 1.5) + ($9.00 per hour x

19   third 4 hours x 2) = $198.00.  Plaintiff should have been paid $198.00 for each 16-hour overnight

20   shift when her regular rate of pay was $9.00 per hour.  When Plaintiff's rate of pay was adjusted

21   downward to $8.00 per hour, her 16-hour overnight shifts should be calculated in the same

22   manner: ($8.00 per hour x first 8 hours x 1) + ($8.00 per hour x second 4 hours x 1.5) + ($8.00

23   per hour x third 4 hours x 2) = $176.00.  Plaintiff should have been paid $176.00 for each 16-hour

24   overnight shift when her regular rate of pay was $8.00 per hour.  Plaintiff's earnings statements

25   from September 6, 2012 to February 3, 2013, when she was paid $9.00 per hour, reflect an

26   incorrect payment of only $144.00 for each overnight shift.  (ECF Nos. 43-5. 43-7, 43-9, 43-11,

27   43-13, 43-15, 43-17.)

28   / / /

1    The Court finds it is likely that Plaintiff can succeed on the merits of this claim.  However,

2    Plaintiff has not provided adequate evidence for the Court to come to that conclusion.  Again, to

3    the extent that there is missing information, it is the moving party's obligation to provide it.  *See*

4    Fed. R. Civ. P. 56(c)(3).  Given the foregoing, Plaintiff's motion for summary judgment as to the

5    overtime and double time wage claim is DENIED.

6                              *iii.        Claim Four*

7    Plaintiff moves for summary judgment on the failure to provide accurate itemized wage

8    statements claim against Defendant Carescope, LLC, arguing Defendants admitted Plaintiff's

9    wage statements failed to record the actual number of hours worked and the accurate rate of pay.

10   (ECF No. 43-1 at 14–16.)  In opposition, Defendants assert Plaintiff has not demonstrated any

11   defect on her wage statements.  (ECF No. 45 at 9.)  Further, Defendants maintain if Plaintiff

12   cannot determine if her wages were accurate or sufficient, it is because she failed to adequately

13   "use the telephony system and [] submit timely and legible timecards."  (*Id.* at 10.)

14   California Labor Code § 226 requires employers to provide their employees with "an

15   accurate itemized statement in writing showing" nine critical payroll elements.  Cal. Lab. Code §

16   226(a).  Employers must provide these wage statements either "semimonthly or at the time of

17   each payment of wages."  *Id.*  Section 226 also creates a cause of action for employees whose

18   employers do not provide adequate wage statements.  *Id.* at § 226(e).  To recover, a plaintiff must

19   show three elements: "(1) a violation of [§] 226(a); (2) that is 'knowing and intentional'; and (3) a

20   resulting injury."  *Garnett v. ADT LLC*, 139 F. Supp. 3d 1121, 1131 (E.D. Cal. 2015) (citing

21   *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1130–31 (N.D. Cal. 2014)).

22                              *a)   Violation of § 226(a)*

23   Plaintiff must first establish that Defendants violated § 226(a).  Section 226(a) requires

24   wage statements list the "accurate itemized statement[s] in writing showing . . . all applicable

25   hourly rates in effect during the pay period and the corresponding number of hours worked at

26   each," unless the employee is exempt from minimum wage and overtime requirements.  Thus,

27   whether Defendants violated § 226(a) turns on two issues: (1) whether Plaintiff was exempt from

28   / / /

                                        17

1  minimum wage and overtime requirements; and (2), if she was not, whether Defendants provided

2  inadequate wage statements.

3           *1.   Exemption from Minimum Wage and Overtime*

4                  *Requirements*

5        Section 226(a) does not require wage statements showing the total hours an employee

6  worked if "the employee is exempt from the payment of minimum wage and overtime

7  under . . . [t]he exemption for persons employed in an executive, administrative, or professional

8  capacity provided in any applicable order of the [IWC]."  Cal. Lab. Code § 226(j)(2)(A).  Like all

9  industry-specific wage orders, Wage Order 5–2001 exempts from minimum wage and overtime

10  requirements employees in executive, administrative, or professional roles.  *Id.* at §

11  11050(1)(B); *see also Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362, 373

12  (2014).

13        Here, Plaintiff argues she does not fall within any of the aforementioned exemptions, as

14  she was paid an hourly rate and Defendant Carescope, LLC "specifically conceded that no

15  exemption applied to Plaintiff or other live-in caretakers" because its PMK testified live-in

16  caretakers were hourly employees.  (ECF No. 43-1 at 14; ECF No. 43-4 at 20.)  Defendants do

17  not raise this affirmative defense or rebut this argument in any manner.  (*See* ECF No. 45.)  Thus,

18  taking the record as a whole, Defendants have not established the existence of a "genuine issue

19  for trial."  *Matsushita*, 475 U.S. at 587.  Accordingly, the Court concludes Plaintiff was not

20  exempt and Defendants were required to issue wage statements that, pursuant to § 226(a), showed

21  "all applicable hourly rates in effect during the pay period and the corresponding number of hours

22  worked at each."

23              *2.   Inadequate Wage Statements*

24        Section 226(a) requires employers to provide their employees with "accurate itemized

25  statement[s] in writing showing . . . all applicable hourly rates in effect during the pay period and

26  the corresponding number of hours worked at each."  Cal. Lab. Code § 226(a).  Here, Plaintiff

27  argues that her wage statements "from September 6, 2012 to February 3, 2013 fail to include the

28  actual number of hours worked and fail to show Plaintiff's lawful hourly rate for overnight

1    shifts." (ECF No. 43-1 at 14.)  Defendants do not respond to this argument in their opposition.

2    (*See* ECF No. 45.)

3          There is no genuine dispute that Defendants failed to provide Plaintiff with wage

4    statements showing the accurate number of hours Plaintiff worked and the accurate rates of pay.

5    Defendant Carescope, LLC's PMK testified Plaintiff was paid at $9.00 per hour for 16 hours of

6    work for her overnight, live-in shifts.  (ECF No. 43-4 at 13.)  The line of questioning during the

7    deposition went as follows:

8          Q. And how were live-in employees paid?
           A. Hourly rate.
9          Q. I saw some references in the documents to some sort of flat daily rate. Does that
           ring a bell?
10         A. Yes. It is not a flat daily rate. That's my calculations.
           Q. That's your calculations. Tell me how you came to that calculation.
11         A. ***It is nine times however many hours they worked***. Eight hours down, sleep time,
           shower time, movie time, whatever you want to call time, eight hours down time.
12         And it would come out to approximately 144. ***So for me to do payroll faster, I could
           calculate 144*** . . .
13

14         Q. BY MR. MALLISON: While he is looking that up, I will ask you something else.
15         So you said nine hours of regular and eight hours of sleep or down time; is that
           correct?
16         A. Well, actually, 16 hours at the rate and eight hours down time.
           Q. And eight hours down time.
17         A. That was our label of live-in, 24-hour shift. It is a label that we put on it in our
           industry.
18         Q. Okay. And at the 16 hours, and that was paid at regular rate?
           MS. FUTERMAN: Objection; lacks foundation as to what the regular rate was.
19         Q. BY MR. MALLISON: Or their regular rate of pay, whatever that may have been?
           A. Yes, that's what they were paid at.
20

21   (*Id.* at 11–13) (emphasis added).  The PMK also explicitly admitted the $144.00 amount is

22   incorrect and "it should have been hourly." (ECF No. 43-4 at 20.)  Thus, Defendants admitted

23   Plaintiff's rate of pay was $9.00 per hour, but she was paid at an incorrect $144.00 per hour rate.

24   Cross-referencing the foregoing information with Plaintiff's earnings statements from 2012 to

25   2013 on pay dates September 21, October 19, November 30, December 26, January 11, January

26   25, and February 8, the Court finds Plaintiff's earnings statements appear as if Defendants paid

27   her $144.00 per hour.  (*See* ECF Nos. 43-5, 43-7, 43-9, 43-11, 43-13, 43-15, 43-17.)  Defendants

28

1   do not contend any of these earnings statements were accurate.  To defeat summary judgment,

2   Defendants must point to some evidence that they issued wage statements correctly showing the

3   hours Plaintiff worked and the rate of pay at which Plaintiff worked.  Defendants have not done

4   so.  Accordingly, the Court concludes Plaintiff has established Defendants violated § 226(a).

5                           *b)  Knowing and Intentional*

6          Plaintiff must also establish Defendants' violation of § 226(a) was "knowing and

7   intentional."  Cal. Lab. Code § 226(e)(1).  "Section 226 is not a strict liability statute — the

8   phrase knowing and intentional in [§] 226(e)(1) must be read to require something more than a

9   violation of [§] 226(a) alone."  *Garnett*, 139 F. Supp. 3d at 1133 (quoting *Willner*, 35 F. Supp. 3d

10  at 1130–31) (internal quotations omitted).  For example, "an isolated and unintentional payroll

11  error due to a clerical or inadvertent mistake" is not a knowing and intentional violation of §

12  226(a).  Cal. Lab. Code § 226(e)(3).

13         To establish Defendants' violation of § 226(a) was "knowing and intentional," Plaintiff

14  must demonstrate Defendants were "aware of the factual predicate underlying the

15  violation[s]."  *Novoa v. Charter Commc'ns, LLC*, 100 F. Supp. 3d 1013, 1028 (E.D. Cal. 2015).

16  However, Plaintiff is not required to demonstrate that Defendants knew their conduct was

17  unlawful.  *Id.* at 1027–28; *Garnett*, 139 F. Supp. 3d at 1133 (citing *Willner*, 35 F. Supp. 3d at

18  1131).

19         Here, Plaintiff argues Defendants' failure to provide accurate paystubs was "knowing and

20  willful" because Defendants admitted Plaintiff's hours were not accurately recorded and "the

21  wage statements Defendants have maintained overwhelmingly show an absence of recorded hours

22  worked by Plaintiff during her overnight shifts."  (ECF No. 43-1 at 16.)  The Court agrees.  As

23  previously mentioned, Defendants implied through the deposition of the PMK the rate of pay on

24  Plaintiff's earnings statement ($144.00 per hour) was listed *for the sake of convenience* — it

25  allowed for Defendant Carescope LLC's PMK "to do payroll faster."  (ECF No. 43-4 at 12.)  The

26  PMK also explicitly admitted the $144.00 is incorrect and "it should have been hourly."  (*Id.* at

27  20.)  The evidence shows Defendants knew Plaintiff's accurate rate of pay, but still listed it

28  incorrectly on her earnings statement, indicating they were "aware of the factual predicate

                                                  20

1    underlying the violation[s]." *See Novoa*, 100 F. Supp. 3d at 1028.  Notably, Defendants do not

2    attempt to rebut the contention that their violation of § 226(a) was "knowing and intentional."

3    (*See* ECF No. 45.)  Accordingly, the Court concludes Defendants' violations of § 226(a) were

4    knowing and intentional.

5                                      *c)  Injury*

6           Finally, Plaintiff must demonstrate she was injured by Defendants' violation of § 226(a).

7    *Willner*, 35 F. Supp. 3d at 1132.  Effective January 1, 2013, § 226(e) was amended to clarify

8    when an employee is deemed to have suffered an injury for purposes of § 226.  *See* Act effective

9    Jan. 1, 2013, ch. 843, 2012 Cal. Stat. 6619 (2012); *see also Novoa*, 100 F. Supp. 3d at 1029

10   (discussing the amendment).  "That amendment explained that the employee suffers injury when

11   an employer fails to provide accurate and complete information as required by [§

12   226(a)] . . ." *Novoa*, 100 F. Supp. 3d at 1029.  Specifically, § 226(e)(2)(B) now provides "[a]n

13   employee is deemed to suffer injury . . . if the employer fails to provide accurate and complete

14   information as required by . . . [§ 226(a)] and the employee cannot promptly and easily determine

15   from the wage statement alone" the information that § 226(a) requires the employer to

16   provide.  Cal. Lab. Code § 226(e)(2)(B); *see also Garnett*, 139 F. Supp. 3d at 1131.  Promptly

17   and easily means "a reasonable person would be able to readily ascertain the information without

18   reference to other documents or information."  Cal. Lab. Code § 226(e)(2)(C).

19          Here, Plaintiff argues there is no way for her to "promptly and easily determine from the

20   wage statement alone her total hours worked."  (ECF No. 43-1 at 20.)  Plaintiff notes her earnings

21   statements for the pay period September 6, 2012 to February 3, 2013 fail to accurately provide the

22   rate of pay or the hours worked for overnight shifts.  (*Id.*)  She also reiterates Defendant

23   Carescope LLC's PMK admitted Defendants did not record the accurate number of hours Plaintiff

24   worked.  (*Id.*)

25          In opposition, Defendants maintain case law provides the "[t]he injury requirement in Cal.

26   Lab. Code § 226(e) cannot be satisfied simply because one of the nine itemized requirements in §

27   226(a) is missing from the wage statement."  (ECF No. 45 at 9.)  Defendants rely on case law that

28   predates the 2013 amendment of § 226(e).  (*Id.* at 9–10.)  This case law provides "the deprivation

                                             21

1    of [required] information, standing alone, is not a cognizable injury," and an employee must

2    demonstrate "*an injury* from the missing information." *Price v. Starbucks Corp.*, 192 Cal. App.

3    4th 1136, 1142–43 (2011) (internal quotations omitted); *see also Elliot v. Spherion Pacific Work,*

4    *LLC*, 572 F. Supp. 2d 1169, 1181 (C.D. Cal. 2008).  Although Defendants do not argue the point

5    outright, the Court understands them to dispute whether the 2013 amendment applies here.

6          This Court has previously analyzed whether application of the 2013 amendment would

7    violate the rule against retroactive legislation. *Cabardo v. Patacsil*, 248 F. Supp. 3d 1002, 1012

8    (E.D. Cal. 2017).  The Court concluded the amendment "merely clarified the injury requirement,

9    rather than propounding a 'substantive shift in the law." *Id.* (citing *Brewer v. General Nutrition*

10   *Corp.*, 2015 WL 5072039, at *8 (N.D. Cal. Aug. 27, 2015)).  The Court found the rule against

11   retroactive legislation is inapplicable "because the true meaning of the statute remains the same."

12   *McClung v. Emp't Dev. Dep't*, 34 Cal. 4th 467, 472 (2004); *see also Ortland v. Cty. of Tehama*,

13   939 F. Supp. 1465, 1471–72 (E.D. Cal. 1996).  The Court thus applies the 2013 amendment in the

14   instant case.

15         Here, Plaintiff received wage statements that were undisputedly inaccurate, which means

16   Plaintiff has shown the requisite injury.  Due to Defendants' deficient wage statements, Plaintiff

17   could not "promptly and easily determine from the wage statement alone" the hours she worked

18   and the accurate rate of pay as required by § 226(a).  Accordingly, the Court concludes Plaintiff

19   has satisfied the injury requirement.

20                                    *d)  Damages*

21         For violations of § 226, the employee may recover the greater of his or her actual damages

22   or a statutory penalty.  Cal. Lab. Code § 226(e)(1).  If the employee seeks a statutory penalty, the

23   amount is fixed by § 226(e)(1) at "fifty dollars ($50) for the initial pay period in which a violation

24   occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay

25   period." *Id.*  If the employee seeks a statutory penalty, he or she may recover an amount "not to

26   exceed an aggregate penalty of four thousand dollars ($4,000)." *Id.*  Employees are also "entitled

27   to an award of costs and reasonable attorney's fees." *Id.*

28         Here, Plaintiff contends the Court should "count the pay periods including up to one year

1    prior to the filing of this case," and "she may seek damages back to November 26, 2013." (ECF

2    No. 43-1 at 20.)  Plaintiff has submitted a "Wage Claim & Penalty Calculation Summary" with

3    her motion for partial summary judgment, which states she is entitled to $850.00 for "Total

4    [Labor Code] § 226 Damages." (ECF No. 43-42 at 1.)  From the $850.00 amount, it would

5    appear as though Plaintiff seeks penalties rather than actual damages.  In her statement of

6    undisputed material facts, Plaintiff provides that earnings statements for *eight* pay periods "failed

7    to reflect the actual number of hours worked" and/or "the correct hourly rate of pay." (ECF No.

8    43-2 at ¶¶ 9–15, 23.)  Plaintiff alleges the remainder of the earnings statements "failed to reflect

9    the correct double time rate of pay for her shifts in which she worked more than 12 hours per

10   day." (*Id.* at ¶¶ 16–22, 24–25.)  The description section for the type of wages paid on these

11   statements is cut off.  (*See* ECF Nos. 43-19, 43-21, 43-23, 43-25, 43-27, 43-29, 43-31, 43-34, 43-

12   36, 43-38.)  The Court therefore cannot determine whether these statements are accurate.

13         Cross-referencing the first eight earnings statements with the full text of the attached

14   exhibits, the Court is aware of only *seven* earnings statements listing inaccurate hours worked and

15   rates of pay.  (*See* ECF Nos. 43-5, 43-7, 43-9, 43-11, 43-13, 43-15, 43-17.)  The eighth earnings

16   statement is not attached as an exhibit in the record as Plaintiff claims.  (ECF No. 43-2 at ¶ 23.)

17   Furthermore, assuming Plaintiff seeks penalties of $850.00, this implies there were *nine* earnings

18   statements listing inaccurate hours worked and rates of pay (given the penalty under § 226(e)(1)

19   of $50 for the initial pay period in which a violation occurs and $100 for each violation in a

20   subsequent pay period).  To the extent the missing information is buried in the record or was not

21   provided to the Court, it is the moving party's obligation to provide it.  *See* Fed. R. Civ. P.

22   56(c)(3).  Consequently, the Court concludes Plaintiff is entitled to recover civil penalties under §

23   226(e)(1) in an amount to be determined.

24         Given the foregoing, Plaintiff's motion for summary judgment as to the accurate itemized

25   wage statements claim is GRANTED on the merits of the claim and DENIED as to the damages

26   sought.

27   / / /

28   / / /

1              *iv.*        *Claim Five*

2              Plaintiff moves for summary judgment on the failure to pay all wages owed upon

3      termination or resignation against Defendant Carescope, LLC, arguing Plaintiff is entitled to 30

4      days wages plus interest as "waiting time penalties" under Cal. Lab. Code § 203 for Defendants'

5      willful failure to timely pay legal wages.  (ECF No. 43-1 at 20–21.)  Plaintiff notes "a willful

6      failure to pay wages . . . occurs when an employer intentionally fails to pay wages to an employee

7      when those wages are due."  (*Id.* at 21.)  In opposition, Defendants assert Plaintiff has no

8      evidence to support waiting time penalties because "there is no evidence that Plaintiff was

9      discharged or resigned her employment."  (ECF No. 45 at 10.)  Defendants also note Plaintiff was

10     offered $10,000 to settle her wage claims with Defendants in 2014, which she refused — thus,

11     there should be no penalties.  (*Id.*)

12             California law provides: "If an employer discharges an employee, the wages earned and

13     unpaid at the time of discharge are due and payable immediately."  Cal. Lab. Code § 201(a).

14     Even when an employee who does not have a written contract for a definite period quits, "his or

15     her wages shall become due and payable not later than 72 hours thereafter, unless the employee

16     has given 72 hours previous notice of his or her intention to quit, in which case the employee is

17     entitled to his or her wages at the time of quitting."  *Id.* at § 202(a).  If an employer willfully fails

18     to comply with §§ 201 and 202 upon an employee's separation, "the wages of the employee shall

19     continue as a penalty from the due date thereof at the same right until paid or until an action

20     therefor is commenced; but the wages shall not continue for more than 30 days."  *Id.* at § 203(a).

21     Penalties under § 203 are known as "waiting time penalties."  *Bates v. Leprino Foods Co. et al.*,

22     2020 WL 6392562, at * 3 (E.D. Cal. 2020) (citing *Mamika v. Barca*, 68 Cal. App. 4th 487, 489

23     (1998)).

24             Here, Plaintiff has not conclusively established she was discharged by Defendants or that

25     she had "a written contract for a definite period."  Plaintiff does not respond to Defendants'

26     assertion that "there is no evidence that Plaintiff was discharged" in her reply brief.  (*See* ECF

27     No. 51.)  At the summary judgment stage, Plaintiff bears the burden of establishing there is no

28     genuine issue of material fact as to whether she was discharged or had "a written contract for a

24

1  definite period." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585–87; *First Nat'l Bank of Ariz.*, 391

2  U.S. at 288–89.  Plaintiff has not provided evidence sufficient to meet this burden.  Accordingly,

3  Plaintiff's motion for summary judgment as to the failure to pay all wages owed upon termination

4  or resignation claim is DENIED.

5  *v.       Attorneys' Fees and Costs*

6  The Court finally turns to Plaintiff's contention that she is entitled to seek an award of

7  attorneys' fees and costs pursuant to Lab. Code §§ 226(e)(1), 1194, and 2699(g)(1).  (ECF No.

8  43-1 at 26.)  These Labor Code sections provide, in addition to recovering damages or penalties

9  for violations of the underlying law, an employee can recover "reasonable attorney's fees" and

10  costs of the suit.  In opposition, Defendants assert that because Plaintiff could have recovered the

11  damages she seeks "more than four years ago," "[c]ommon sense and equity compels the

12  conclusion that Plaintiff should not be rewarded with attorney's fees."  (ECF No. 45 at 14.)

13  The Court finds Plaintiff's request is premature.  Procedurally, the Eastern District of

14  California's Local Rules ("E.D. Cal. L.R.") require all motions for attorneys' fees be filed no later

15  than "28 days after entry of final judgment."  E.D. Cal. L.R. 293(a) (citing Fed. R. Civ. P. 54(d),

16  58); *see also* E.D. Cal. L.R. 292 (bill of costs must be filed within 14 days of judgment); *White v.*

17  *N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 451–52 (1982) (fees inquiry could not commence until

18  after one party had "prevailed" on the merits of the litigation); *Jones v. Bradshaw Bar Grp., Inc.*,

19  735 Fed. Appx. 233, 234–35 (9th Cir. 2017) (entry of final judgment required to trigger deadline

20  to file fees motion)).  The Court therefore declines to grant Plaintiff's request on this basis and

21  reserves ruling on this matter until it is properly before the Court.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

25

**IV.    CONCLUSION**

It is hereby ORDERED:

1.  Defendants' Motion for Partial Judgment on the Pleadings (ECF No. 38) is
    GRANTED in part and DENIED in part as follows:

    a.  Defendants' Motion for Partial Judgment on the Pleadings as to
        Plaintiff's Claim Six is DENIED;

    b.  Defendants' Motion for Partial Judgment on the Pleadings as to
        Plaintiff's Claim Seven is DENIED; and

    c.  Defendants' Motion for Partial Judgment on the Pleadings as to
        Plaintiff's Claim Eight is GRANTED with leave to amend;

2.  Plaintiff's Motion for Partial Summary Judgment (ECF No. 43) is GRANTED
    in part and DENIED in part as follows:

    a.  Plaintiff's Motion for Summary Judgment as to Plaintiff's Claim Two
        is DENIED;

    b.  Plaintiff's Motion for Summary Judgment as to Plaintiff's Claim Three
        is DENIED;

    c.  Plaintiff's Motion for Summary Judgment as to Plaintiff's Claim Four
        is GRANTED as to the merits of the underlying claim and DENIED as
        to the damages sought;

    d.  Plaintiff's Motion for Summary Judgment as to Plaintiff's Claim Five
        is DENIED; and

3.  The parties are hereby ordered to file a Joint Notice of Trial Readiness within
    thirty (30) days of electronic filing of this Order indicating their readiness to
    proceed to trial and proposing trial dates.

IT IS SO ORDERED.

DATED:  November 24, 2020

Troy L. Nunley
United States District Judge